# United States Court of Appeals for the Federal Circuit

05-3123

SUSANNE ATANUS,

Petitioner,

v.

MERIT SYSTEMS PROTECTION BOARD,

Respondent,

and

GENERAL SERVICES ADMINISTRATION,

Intervenor.


Barry A. Gomberg, Barry A. Gomberg & Associates, Ltd., of Chicago, Illinois, for petitioner.

Jeffrey A. Gauger, Attorney, Office of the General Counsel, United States Merit Systems Protection Board, of Washington, for respondent. With him on the brief were Martha B. Schneider, General Counsel, and Rosa Koppel, Deputy General Counsel.

Appealed from: United States Merit Systems Protection Board

# United States Court of Appeals for the Federal Circuit

05-3123

SUSANNE ATANUS,

Petitioner,

v.

MERIT SYSTEMS PROTECTION BOARD,

Respondent,

and

GENERAL SERVICES ADMINISTRATION,

Intervenor.

_____

DECIDED:  January 6, 2006
_____

Before NEWMAN, LOURIE, and SCHALL, <u>Circuit Judges</u>.

Opinion for the court filed by <u>Circuit Judge</u> LOURIE.  Dissenting opinion filed by <u>Circuit Judge</u> NEWMAN.

LOURIE, <u>Circuit Judge</u>.

## DECISION

Susanne Atanus ("Atanus") petitions for review of the final decision of the Merit Systems Protection Board ("Board") dismissing her appeal for lack of jurisdiction.  <u>Atanus v. Gen. Serv. Admin.</u>, No. CH-0752-03-0703-I-1 (M.S.P.B. Jan. 26, 2004) ("<u>Decision</u>").  Because Atanus elected to grieve her removal, the Board was correct in holding that she had no right of appeal.  We therefore affirm.

BACKGROUND

On July 1, 2003, Atanus received a notice of removal from her position of Procurement Analyst due to disorderly conduct charges and failure to follow authorized instructions. Decision, slip op. at 2. The removal letter stated that Atanus could challenge her removal either by filing a grievance or by appealing to the Board, but not both. As far as pursuing a grievance was concerned, the letter stated: "Under the terms of the GSA/NFFE National Agreement, you may be represented and assisted by the union in exercising any of your grievance rights." On July 22, 2003, Atanus sent a letter to the deciding official, Richard Smith, stating that she wished to grieve her removal and asked to be assisted and represented by the union in the grievance procedure. Id. Two days later, she sent a second letter confirming her election of the grievance procedure, expressing her desire to proceed to arbitration, and designating a representative. On July 26, 2003, Atanus sent a third letter withdrawing her grievance. That same day she filed an appeal to the Board. Id.

The General Services Administration ("GSA") filed a motion to dismiss the appeal, arguing that Atanus waived her right to appeal to the Board when she elected to grieve her removal in her first letter. Atanus responded that her election of the grievance procedure was not an informed election because she was misled by her union representative. Atanus claimed that before she elected to grieve her removal, a representative told her that the union would assist her, and that she made her decision to grieve based on the assumption that she would be represented by the union throughout the entire grievance process.

05-3123                                    2

After she made the election, however, Atanus alleged, the representative told her that the union was no longer willing to represent her. Based on this information and believing that she would not be represented, Atanus withdrew her grievance and appealed to the Board.

The Administrative Judge ("AJ") granted the GSA's motion to dismiss, stating that Atanus was barred by 5 U.S.C. § 7121(e)(1) from appealing her action to the Board because she had first filed a grievance. The AJ concluded that once Atanus made a knowing and binding election to grieve her removal, she waived her right to appeal to the Board.

The AJ noted that there is an exception to this waiver where the agency fails to inform the employee of her options. However, the AJ determined that the exception did not apply in this case because the agency properly informed Atanus in its removal letter that she could either appeal to the Board or file a grievance. The AJ rejected Atanus's argument that her decision was not an informed one due to alleged misrepresentations by the representative because there was nothing in the record to support her statements. Furthermore, the AJ noted, Atanus did not claim that the union refused to file a grievance on her behalf, but rather alleged that the union told her that, at some point, they would stop representing her. Finally, the AJ found that even if it were assumed that Atanus was misled by her representative, the case would still have to be dismissed because Atanus remained personally responsible for the diligent prosecution of her grievance.

Atanus petitioned for review by the full Board, which denied her petition in January 2005, making the initial decision of the AJ final. See 5 C.F.R. § 1201.113. Atanus then timely appealed to this court. We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(9).

## DISCUSSION

The scope of our review in an appeal from a decision of the Board is limited. We must affirm the Board's decision unless it was: "(1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (2) obtained without procedures required by law, rule, or regulation having been followed; or (3) unsupported by substantial evidence." 5 U.S.C. § 7703(c) (2000); see Briggs v. Merit Sys. Prot. Bd., 331 F.3d 1307, 1311 (Fed. Cir. 2003). Whether the Board has jurisdiction to adjudicate an appeal is a question of law that we review de novo. See Campion v. Merit Sys. Prot. Bd., 326 F.3d 1210, 1213 (Fed. Cir. 2003).

On appeal, Atanus contends that the removal letter was misleading and incomplete because it failed to inform her that she needed to inquire whether the union would represent her before electing to grieve her removal. Furthermore, the letter stated that under the terms of the National Agreement between GSA and the National Federation of Federal Employees, Atanus "may be represented and assisted by the union" during the grievance procedure. Atanus understood that language to mean that if the union assisted her, it would also represent her during the entire grievance process. Moreover, according to Atanus, the union

representative further misled her by stating that he would "assist" her in the grievance procedure and later deciding not to represent her.

The Board responds that GSA expressly notified Atanus of her options in the removal letter, which is all that is required of the agency. According to the Board, the union's actions do not implicate the agency. Furthermore, the Board argues, the union did not mislead Atanus because the union indicated that it would "assist" her, and "assist" does not mean "represent." Finally, even if the union decided it would not represent Atanus, it was Atanus's responsibility to determine whether the union would represent her before electing the grievance procedure.

We conclude that the Board properly decided that it did not have jurisdiction over Atanus's appeal because she made an informed decision to grieve her removal, thereby waiving her right to appeal to the Board. Under 5 U.S.C. § 7121(e)(1), an aggrieved employee may raise his or her grievance by timely filing a written grievance under the negotiated grievance procedure or by filing a notice of appeal under the applicable appellate procedures, "but not both":

> Matters covered under sections 4303 and 7512 of this title which also fall within the coverage of the negotiated grievance procedure may, in the discretion of the aggrieved employee, be raised either under the appellate procedures of section 7701 of this title or under the negotiated grievance procedure, but not both.

5 U.S.C. § 7121(e)(1). "[O]nce a timely filing is made to pursue a path, the other is forever waived." Rodriguez v. Merit Sys. Prot. Bd., 804 F.2d 673, 675 (Fed. Cir. 1986). In order to comply with the statute, the agency must

properly inform an employee of her choices. See Johnson v. U.S. Dep't of Labor, 26 M.S.P.R. 447, 450 (1985).

In this case, the agency expressly informed Atanus in its removal letter that she had the option to pursue a grievance procedure or appeal to the Board, but not both. Although Atanus alleges that her election was not properly informed, that is not correct. While a few Board decisions have held that an election of a grievance was not binding, in such cases the Board found that the employee's decision was not fully informed because the agency had only notified the employee of one available avenue of recourse when others were available. See Johnson v. U.S. Dep't of Labor, 26 M.S.P.R. at 450; Miyai v. Dep't of Transp., 32 M.S.P.R. 15 (1985); Blanshan v. Dep't of the Air Force, 23 M.S.P.R. 84 (1984). That is not the case here. The agency clearly notified Atanus in her letter of both options and that she could only pursue one option.

Atanus also contends that her election was uninformed because the letter did not completely notify her of the scope of her union representation and the union representative misled her. However, these are allegations of union misconduct, and are not the fault of the agency. Moreover, there is nothing in the record from which to ascertain what the union representative may or may not have told Atanus. Thus, we can only evaluate Atanus's undisputed actions, which are that she opted for the grievance procedure having been previously told by the agency that grieving would preclude an appeal.

Atanus clearly elected to pursue the grievance procedure. Although she later changed her mind, irrespective of the reason, as long as the agency clearly

expressed to Atanus that she had two options, and that one would exclude the other, and Atanus exercised one option, Atanus is precluded from withdrawing her option to pursue the other. It was incumbent upon Atanus to inquire into the extent of the union's assistance before making a binding election.

Atanus also contends that the AJ was prejudiced and biased towards her during a settlement conference between the parties by stating that she should settle or face dismissal of her claims. There is nothing in the record, however, to support this other than Atanus's statement. Even accepting the statement as true, it does not establish that the judge had a "deep-seated favoritism or antagonism that would make fair judgment impossible." Beiber v. Dep't of the Army, 287 F.3d 1358, 1362 (Fed. Cir. 2002).

The dissent emphasizes the short time period between Atanus's election of a grievance and its withdrawal, suggesting lack of prejudice to the agency. Were we empowered to sit as a court of equity, taking into account the difficulties of employee decision-making, and deciding where the merits lie, we might agree. But we are not; it is our task to determine whether the Board erred in applying a statute, not to amend the statute to take account of lack of prejudice, length of time between election and withdrawal of election, etc. That is a slippery slope not for courts of appeals interpreting statutes.

Unfortunately, Atanus lost her Board appeal right by electing to pursue a grievance, and then lost her grievance right by withdrawing her grievance. As we are bound by the statute, which holds that an employee may either file a

grievance or appeal to the Board, but not both, and Atanus elected a grievance, she has no right of appeal to the Board.

COSTS

No costs.

<u>AFFIRMED.</u>

# United States Court of Appeals for the Federal Circuit

05-3123

SUSANNE ATANUS,

Petitioner,

v.

MERIT SYSTEMS PROTECTION BOARD,

Respondent,

and

GENERAL SERVICES ADMINISTRATION,

Intervenor.

NEWMAN, Circuit Judge, dissenting.

My colleagues hold that an employee cannot change her election of the grievance procedure after three days, although the grievance proceedings had not yet begun; indeed, no proceeding had been initiated. Ms. Atanus learned, after she chose the grievance path, that the union would not provide representation throughout the procedure. On receiving this information, she promptly withdrew her request for a grievance proceeding, and filed a timely appeal with the MSPB. My colleagues hold that the statute prohibits such a change. Although the statute is silent, my colleagues hold that the initial election is final and irrevocable, no matter how prompt the revocation, no matter what the circumstances.

There is no allegation of prejudice to the agency, to the union, to the MSPB, or to anyone else. No deadline had passed; her appeal to the MSPB was timely. The statute does not prohibit a modicum of accommodation for mistakes, misinformation, or change of heart, in administration of "the discretion of the aggrieved employee." The statute, 5 U.S.C. §7121(e)(1), authorizes the employee to choose either the grievance procedure or an appeal to the MSPB "but not both":

> (1) Matters covered under sections 4303 and 7512 of this title which also fall within the coverage of the negotiated grievance procedure may, in the discretion of the aggrieved employee, be raised either under the appellate procedures of section 7701 of this title or under the negotiated grievance procedure, but not both.

5 U.S.C. §7121(e)(1). The purpose is to prevent an employee from taking one appellate path and then, if unsuccessful, trying the other. Ms. Atanus elected the grievance procedure on Tuesday, July 22, 2003, designating the union as her representative. She was then informed by the union that it would not assist her "in the entire grievance procedure and that I should acquire a lawyer." Ms. Atanus withdrew the grievance request on Saturday, July 26, 2003, and filed a timely appeal with the MSPB.

Neither statute nor precedent prohibits such action. I have found no case where the employee was prohibited from changing the election during the initial period set for choosing the path of review. As the panel majority acknowledges, several Board decisions have held that the initial choice could be changed. When the issue reached the Federal Circuit in Whitaker v. MSPB, 784 F.2d 1109 (Fed. Cir. 1986), the petitioner sought to change his election after he was well into the grievance process, thus having implemented his choice. In Rodriguez v. MSPB, 804 F.2d 673 (Fed. Cir. 1986), cited by the panel majority, Mr. Rodriguez elected the grievance procedure and prosecuted the grievance

through the first two steps; he then was untimely for the third phase, whereupon the arbitrator dismissed the grievance. Rodriguez then attempted to appeal to the MSPB, and asked the MSPB to waive its filing deadline. The court held that he could not start afresh with an appeal to the MSPB, upon having chosen the grievance path; and that since there was no discrimination claim the Board could not review the arbitrator's decision. These facts are quite different from those at bar, for Ms. Atanus did not prosecute the grievance even to the first step during the three days before she withdrew the grievance, and the deadline for filing an appeal to the Board had not passed. The agency has not alleged any prejudice. The statute requires the employee to elect either grievance or appeal; but contrary to the majority's view of the statute, it does not prohibit a prompt change, at least upon new information, during the period of election.

Even applying to this administrative action the rigorous standards of judicial proceedings, a plaintiff may withdraw a complaint before response, without prejudice to refiling elsewhere. Ms. Atanus should have the right to change her election when, within three days, she was told that the expected representation would not be available throughout the proceeding. Nothing had begun, and the time for filing the MSPB appeal had not expired. The statute does not require prohibiting such a change of election. In law, as in life, there must be a bit of tolerance in the machinery, lest too tight a fit freeze the apparatus. As things stand, Ms. Atanus is now held bound by her withdrawal of the grievance path, but excluded from her substitution of the appeal path. The statute does not require this result. The resulting inequity is unwarranted and unnecessary.

I doubt that this is a "slippery slope," in the majority's words, or that permitting a justified change of direction, as the MSPB has permitted in other cases, will lead to a wave

of 3-day changes of election. It would, however, achieve a fairer result in this case, where Ms. Atanus has suffered an "adverse action" in deprivation of her livelihood -- surely a serious matter -- yet is met with the implacable judicial ruling that she had lost all right of review. If she is barred from the MSPB appeal because of her initial election of the grievance procedure, then at a minimum, she should be allowed to proceed by grievance. Surely the statute does not require that an attempted change in election will bar both statutory paths. This is the "absurd result" described by the Court in Holy Trinity Church v. United States, 143 U.S. 457, 459 (1892):

> It is a familiar rule that a thing may be within the letter of the statute and yet not within the statute, because not within its spirit nor within the intention of its makers. . . . This is not the substitution of the will of the judge for that of the legislator; for frequently words of general meaning are used in a statute, words broad enough to include an act in question, and yet a consideration of the whole legislation, or of the circumstances surrounding its enactment, or of the absurd results which follow from giving such broad meaning to the words, makes it unreasonable to believe that the legislator intended to include the particular act.

Thus I must, respectfully, dissent.